Fabricant, Judith, J.
INTRODUCTION
This action presents a contract dispute involving real estate development. The plaintiffs, Elaine Finbury and Rufus Choate Associates, a limited partnership, bring claims of breach of contract, fraud, promissoiy estoppel, unjust enrichment, breach of fiduciary duty, quantum meruit, and violation of G.L.c. 93A against the defendants, Architectural Heritage Foundation, Inc. (“Architectural” or “AHF”), and its president Sean McDonnell. Before the Court is the defendants’ motion to dismiss for failure to state a claim upon which relief can be granted. For the reasons that will be explained, the motion will be allowed in part and denied in part.
BACKGROUND
The plaintiffs’ complaint, along with documents appended to or referenced in it, presents the following factual background. Elaine Finbuiy is a preservationist and real estate developer who specializes in rehabilitation of historic properties. Rufus Choate Associates is either a name under which she does business, or a separate entity of which she is the principal.[1] Architectural is a non-profit corporation. On February 1, 2002, Finbuiy and Architectural entered into an agreement, which the complaint refers to as the “joint venture agreement.” The agreement, in the form of a letter from Architectural to Finbuiy, provides that Architectural “hereby engages you as a consultant to search for real estate opportunities . . . which can be developed and/or acquired as a joint venture opportunity between us. Should we decide to go forward with a project which you present to us, ... Architectural would enter into a joint venture agreement with you ... to acquire and develop the project on terms more particularly described in this agreement.” The letter agreement goes on to provide that Architectural retains Finbuiy as a consultant, for a one year period, at a monthly fee of $6,000. Finbuiy, according to the agreement, is an independent contractor, and “[t]his agreement shall not constitute you as an agent or legal representative of Architectural for any purpose whatsoever and creates no relationship of employment, principal and agent, partnership or joint venture, except as hereinafter provided.”
The letter describes the joint ventures that the parties contemplate, providing that “(e]ach joint venture will be a limited liability company (or other type of entity acceptable to you and Architectural . . .).” It goes on, “(t]he operating agreement for each entity will provide for you to acquire and develop the project in accordance with a budget approved by Architectural. The operating agreement for each joint venture will contain customary covenants, conditions and provisions for similar investor partnerships, including, the retention by Architectural of approval rights over various major decisions . . . until such time as Architectural has received a return of all of its equity in the project.” Thereafter, according to the letter, the parties will make decisions jointly, “and if the parties are unable to agree, an appropriate dispute resolution mechanism will be triggered.” It describes in detail an “exit mechanism” to be provided for “(e]ach joint venture.” Regarding “Returns to Joint Venture Partners,” the letter provides that “ [available cash flow . . . shall be paid to Architectural until Architectural has received a return of all its capital together with an agreed upon rate of return, determined on a transaction by transaction basis.” Thereafter, returns are to be split equally. According to the letter, during the one-year term of the agreement Finbuiy would “search for and bring to Architectural all opportunities you discover for the development of residential and commercial real estate.” Architectural would then have thirty business days “to indicate whether it will move forward with the transaction and to outline and discuss revisions to the budget.”
The complaint alleges that, although the agreement was initially for a term of one year, the parties “by their conduct” annually renewed the agreement until November 2006. During that period Finbuiy brought residential and commercial development opportunities that she discovered to Architectural, and Architectural paid her $6,000 per month, as provided in the agreement. Finbuiy located six projects, four in Lawrence and two in Lowell. According to the complaint, Finbuiy went well beyond identifying projects and proposing them to Architectural; she coordinated feasibility studies, raised funds to underwrite pre-devel-opment activities, assembled the necessary professionals, assessed costs, worked on obtaining necessary public support and public and private financing, arranged historic preservation tax credits, communicated with public officials to obtain necessary zoning changes, and lobbied public officials for various other accommodations necessary for the projects.
As a result of these efforts on Finbuiy’s part, the complaint alleges, Architectural was able to acquire and develop two of the projects, and has the others in pre-development stages. Despite Finbuiy’s requests and McDonnell’s repeated promises, however, Architectural has refused to enter into joint venture agreements with her regarding any of the projects. The complaint alleges that McDonnell “strung Finbuiy along, making promises that he would fulfill the terms *369 of their Agreement,” and that those promises induced her to continue work on obtaining public financing. At one point, with respect to one of the developed properties in Lowell, McDonnell told Finbuiy that she would not be receiving equity, but that he would “make good on their Agreement in other ways, including a lump sum bonus payment for her work as well as a long term employment contract. The bonus he contemplated was approximately $400,000.” She relied on that assurance to continue her work on that and other projects. On November 16, 2006, the complaint alleges, Architectural “purported to unilaterally terminate the Agreement.” Architectural “has refused to pay Ms. Finbuiy on any of the projects and has refused to include Ms. Finbuiy as a partner to have ownership and share in" the profit on the projects.
The complaint further alleges that the parties entered into a second agreement, under which Rufus Choate Associates would provide tax credit consulting work to Architectural.[2] That agreement provides for Rufus Choate Associates to perform specified work in connection with a specified project, between specified dates, for total compensation of $75,000, to be paid in installments upon completion of specified parts of the work. The contract further provides that “Rufus Choate Associates reserves the right to charge AHF on [an] hourly basis of $115 should additional services be required.” According to the complaint, the parties “orally amended” the written agreement; Rufus Choate Associates performed its obligations “pursuant to the oral amendment,” but Architectural failed to pay $15,000 owed. The complaint goes on to allege that Rufus Choate Associates provided services of a value of $75,000, and that Architectural has paid only $60,000. The allegations leave unclear how these amounts relate to the $75,000 figure set in the contract; it is not apparent whether the plaintiff intends to allege that Rufus Choate Associates performed $75,000 worth of services beyond those provided in the contract, or whether it performed the services provided in the contract but was paid only $60,000, rather than the $75,000 agreed.
Based on these factual allegations, the complaint sets forth eight counts. Count I alleges that Architectural has breached the letter agreement “by refusing to enter into a joint venture agreement for each specific project” and by denying Finbuiy fifty percent of the profit on each project. Count II alleges fraud by both Architectural and McDonnell in the making of statements, both in the letter agreement and at various later times, expressing the intention to share profits with her or otherwise compensate her, when they did not have such intention. Counts III and IV claim promissoiy estoppel and unjust enrichment against Architectural and McDonnell based on Finbury’s detrimental reliance on the promise of a share of profits or other compensation. Count v. alleges breach of fiduciaiy duty by Architectural, on the theory that the letter “created a joint venture agreement,” and that Architectural breached its fiduciaiy duty to Finbury as a joint venturer “when it deprived her of her equity ownership and share of the profits” and terminated the agreement. Count VI alleges, in the alternative, that Finbuiy was a consultant, rather than a joint ven-turer, and that Architectural and McDonnell violated G.L.c. 93A by terminating the agreement and excluding her from the opportunity to share in the profit. Count VII alleges breach by Architectural of the tax credit consulting agreement; and count VIII seeks relief in quantum meruit for tax credit consulting services, alleging that Architectural has paid $60,000 for services worth $75,000. Defendants move to dismiss all counts for failure to state a claim.
DISCUSSION
On a motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), the Court must “accept the factual allegations of the plaintiffs complaint, as well as any favorable inferences reasonably drawn from them, as true.” Sullivan v. Chief Justice, 448 Mass. 15, 20 (2007), quoting Ginther v. Commissioner of Ins., 427 Mass. 319, 322 (1998). Such amotion to dismiss will only be granted if “it appears with certainty that the nonmov-ing party is not entitled to relief under any combination of facts that he could prove in support of his claims.” Sullivan, 448 Mass. at 21, citing Spinner v. Nutt, 417 Mass. 549, 550 (1994). In evaluating a motion to dismiss, “matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint . . . may be taken into account.” Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000).
A. Count I; Breach of “Joint Venture Agreement”
“It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract ...” Situation Mgmt. Systems, Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000). The material terms must be sufficiently defined “so that the intentions of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined.” Lucey v. Hero Int’l Corp., 361 Mass. 569, 574 (1972), citing Cygan v. Megathlin, 326 Mass. 732, 733-34 (1951), citing Read v. McKeague, 252 Mass. 162 (1925). That parties may have agreed to negotiate terms is not enough to give rise to an enforceable contract; “[a]n agreement to reach an agreement is a contradiction in terms and imposes no obligations on the parties thereto . . .” Lafayette Place Assocs. v. Boston Redev. Auth., 427 Mass 509, 517 (1998); see also Kaufman v. Lennox, 265 Mass. 487, 488-89 (1929) (imprecise agreement regarding price rendered contract unenforceable because parties failed to reach agreement on material term).
*370 The letter agreement in issue here expresses the parties’ intention to enter into a joint venture agreement with respect to each project, outlines the overall structure of the contemplated agreements, and describes a number of the anticipated terms in considerable detail. It does not, however, resolve all material terms. Most significantly, it leaves open the ultimate division of returns on the project. The agreement states that each party would be entitled to receive half of the income derived from each project after Architectural had received “an agreed upon rate of return” on its investment, which rate would be “determined on a transaction by transaction basis.” Without agreement on that figure, it is impossible to determine how much of the income from any project each side would be entitled to receive. The agreement also leaves open the mechanism by which disputes as to major decisions in any development project would be resolved, referring only to “an appropriate dispute resolution mechanism.” Nothing before the Court indicates that these gaps in the agreement can be filled by reference to any formula or to any past practice or norms or standards in the field.[3] See Situation Mgmt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 879 (2000). Without agreement on these material terms, the agreement does not establish a binding contract, and count I must be dismissed.
B. Count II: Fraud
To support a claim for fraud, a plaintiff must show that the defendant “made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to [her] damage.” Danca v. Taunton Sav. Bank, 385 Mass 1, 8 (1982), citing Barrett Assocs. v. Aronson, 346 Mass. 150, 152 (1963). Unkept promises are not sufficient to support a claim of fraud, Yerid v. Mason, 341 Mass. 527, 530 (1960), but “statements of present intention as to future conduct may be the basis for a fraud action if . . . the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage.” Starr v. Fordham, 420 Mass. 178, 187 (1995), quoting McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 709 (1990); see also Brewster Com. v. Blue Mountain, Inc., 68 Mass.App.Ct. 582, 601 n.45 (2007) (“statements about future events concerning the conduct of a business may be actionable as misrepresentations when the parties to the transaction are not on equal footing but where one has or is in a position where he should have superior knowledge concerning the matters to which the misrepresentation relate”), quoting Millen Indus., Inc. v. Flexo-Accessories Co., 5 F.Sup.2d 72, 74 (D.Mass. 1998). Whether reliance on a statement of intention is reasonable is usually a question of fact. Reliance is unreasonable as a matter of law, however, where the expressed intention is insufficiently definite to support the formation ofacontract. See Saxon Theatre Corp. v. Sage, 347 Mass. 662, 668 (1964).
For Finbury’s fraud claim to survive, she must show that the defendants misstated their actual intentions, and that she reasonably relied on those misstatements. Her complaint alleges misstatement of intentions at two separate times; she alleges that the defendants misstated their intentions in entering into the letter agreement in February of 2002, and that they again misstated their intentions in 2006 when they assured her that they intended to pay her a cash bonus for her work on the Lawrence project, and to provide her with a favorable offer of long-term employment. The first of these alleged misstatements fails for essentially the same reason that the contract claim fails; the alleged promise to enter into joint venture agreements was too indefinite to support reasonable reliance. See Saxon Theatre Corp. v. Sage, 347 Mass. at 668 (“Until all the essential terms are settled, it cannot reasonably be said that there is a meaningful intention which can be misrepresented”). The later alleged misrepresentation, however, is more definite; she was to receive a cash bonus, in the range of $400,000, along with an offer of long-term employment. Drawing all reasonable inferences in favor of the plaintiff, as it must at this stage, the Court cannot say that reliance on this alleged misrepresentation was unreasonable as a matter of law. Accordingly, the fraud claim will stand based on this alleged misrepresentation only.[4]
C. Count III: Promissoiy Estoppel
“When a promise is enforceable in whole or in part by virtue of reliance, it is a ‘contract,’ and it is enforceable pursuant to a ‘traditional contract theory’ antedating the modern doctrine of consideration .. . We do not use the expression ‘promissoiy estoppel,’ since it tends to confusion rather than clarity.” Loranger v. Construction Corp. v. E.F. Hauserman Co., 376 Mass. 757, 761 (1978) (citations omitted). To enforce apromise based on reliance, a party must prove all elements of a contract claim other than consideration. See R.I. Hosp. Trust Nat’l Bank v. Varadian, 419 Mass. 841, 850 (1995). Thus, where a contract claim fails for lack of agreement on all material terms, a claim based on reliance must fail as well, for the same reason. See Hall v. Horizon House Microwave, Inc., 24 Mass.App.Ct. 84, 94 (1987).
Finbuiy’s claim of promissoiy estoppel, like her fraud claim, is based on two separate promises: the promise to enter into joint venture agreements, as set forth in the letter agreement, and the later promise, in 2006, to pay her a bonus of some $400,000, and offer her long-term employment. For the reasons already discussed, the former is unenforceable, not for lack of consideration, but because it is too indefinite to support reliance. As to the latter, however, the allegations *371 of the complaint, considered with all reasonable inferences drawn in the plaintiffs favor, are enough to warrant enforcement.
A further problem arises, however. The complaint asserts count III against both Architectural and McDonnell. Its factual allegations allege that McDonnell made the alleged promise on behalf of Architectural, but nothing in the complaint suggests that McDonnell ever made any promise on his own behalf, separate from his position on behalf of Architectural. Proof of the allegations presented would not warrant enforcement of any promise against McDonnell personally. This count must therefore be dismissed as to McDonnell, but will stand as against Architectural insofar as it is based on the promise alleged to have been made in 2006 of a bonus and offer of employment.
D.Count IV: Unjust Enrichment
“Unjust enrichment is defined as ‘retention of money or property of another against the fundamental principles of justice or equity and good conscience.’ ” Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005), quoting Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co., 534 F.Sup. 340, 347 (D.Mass. 1982). “Typically, unjust enrichment involves a benefit conferred on one party by another.” Taylor Woodrow Blitman, 534 F.Sup. at 347. Where a party has an adequate remedy at law, recovery for unjust enrichment is not available. Id.
The defendants argue that the plaintiff cannot recover for unjust enrichment because she received compensation for her consulting services under the terms of the contract. See Zarum v. Brass Mill Materials Corp., 334 Mass. 81, 85 (1956) (no recovery for unjust enrichment where express contract covers same subject matter). The argument mistakes the theory of the complaint. The plaintiffs claim is that she performed a set of services in furtherance of the development projects that went beyond identifying potential projects and presenting them to Architectural, as she was required to do under the contract in her role as consultant; that she did so in reliance on the promise of a joint venture role; and that those services conferred a benefit on Architectural for which she is entitled to compensation. The allegations of the complaint provide adequate support for this claim, as against Architectural. Here again, however, the complaint provides nothing to support personal liability of McDonnell; it contains no allegation that he received any personal benefit from the plaintiffs services. Accordingly, the claim of unjust enrichment will stand against Architectural, but will be dismissed as against McDonnell.
E.Count V: Breach of Fiduciary Duty
Countv. asserts a claim of breach of fiduciary duty, on the theory that the parties owed each other a fiduciary duty as members of a joint venture. For the reasons already discussed, the letter agreement, while expressing the parties’ intent to establish joint ventures with respect to each of a series of potential development projects, did not actually establish any joint venture. For that reason, no fiduciary duty existed between the parties, and the claim asserted in Countv. must be dismissed. See Shinberg v. Gaifinkle, 361 Mass. 1, 114-15 (1972) (no fiduciary duty where agreement did not create a joint venture); Gannett v. Lowell, 16 Mass.App.Ct. 325, 330 (1983) (where no joint venture agreement existed, no fiduciary duty existed).
F.Count VI: Violation of G.L.c. 93A
As an alternative to the joint venture theory, the complaint alleges that the defendants engaged in unfair or deceptive acts or practices, in violation of G.L.c. 93A, by terminating the agreement and “excluding her from the opportunity to obtain 50%” of the profits from the development projects. The defendants argue that this claim must be dismissed because the transactions between the parties were “strictly private in nature,” rather than “in the ordinary course of a trade or business.” Newton v. Moffie, 13 Mass.App.Ct. 462, 468 (1982).
“It is well established that disputes between parties in the same venture do not fall within the scope of G.L.c. 93A, §11.” Szalla v. Locke, 421 Mass. 448, 451 (1995). The statute does apply to transactions involving the sale of services, but only to “those offered generally by a person for sale to the public in a business transaction.” Id. at 452, quoting Manning v. Zuckerman, 388 Mass. 8, 13 (1983). The facts of Szalla v. Locke are closely analogous to those presented here; the parties discussed establishing a joint venture or partnership, and made substantial preparations to operate a business together under such an arrangement, but terminated their relationship without ever having finalized the arrangement. See Szalla, 421 Mass. at 449-50. On those facts, the Court held that “the association between the plaintiff and the defendant in the interests of forming a business venture together is not the kind of commercial transaction regulated by the statute.” Id. at 452.
The complaint in this case, however, read with all reasonable inferences drawn in favor of the plaintiff, adds an element not present in Szalla. As discussed supra in connection with the fraud claim, the complaint alleges that the defendants never actually intended to enter into a joint venture with the plaintiff, but falsely represented that they intended to do so. Where a party engages in sham negotiations for a joint venture, without any actual intent to establish such a relationship, courts have applied G.L.c. 93A. See Goldbaum v. Weiss, 50 Mass.App.Ct. 554, 559 (2000); DSF Investors, Inc. v. Lyme Timber Co., 2004 WL 3414427, at *18, Civil No. 024042 (Mass.Super.Ct. Dec. 22, 2004) (Botsford, J.) [19 *372 Mass. L. Rptr. 411]. The Court therefore concludes that plaintiffs allegations, taken as true for purposes of this motion, adequately state a claim under c. 93A againstArchitectural.[5]
Here again, as with earlier counts, the complaint names McDonnell individually without providing any factual basis for individual liability. Nothing in the allegations suggests that he made any promises on his own behalf, outside the scope of his role as president of Architectural, or that he personally acted in trade or commerce. Accordingly, Count VI will be dismissed as to McDonnell, but will stand as to Architectural.
G. Count VII: Breach of Contract for Tax Credit Consulting Services
The defendants argue that count VII should be dismissed because it relies on an alleged oral amendment to the written contract for tax credit consulting services, and that contract provides, in paragraph 9J, that no amendment “will be valid unless in writing and signed by both parties.” Provisions of this sort do not nullify subsequent oral modifications supported by consideration. See First Pa. Mort. Trust v. Dorchester Sav. Bank, 395 Mass. 614, 625 (1985); Siegel v. Knott, 316 Mass. 526, 528 (1944). The complaint here does not identify any consideration for the amendment; indeed, it barely even identifies the existence of the tax credit consulting contract, making reference to it only in count VII, without any reference in the recitation of facts incorporated in each count. As pled, this count fails to allege a valid oral modification. Given the sparseness of the pleading on this count, however, the Court cannot determine whether the defect lies in the facts, or merely in the pleading. Accordingly, the Court will dismiss this count with leave to amend to allege adequate consideration for the oral modification.
H. Count VIII: Quantum Meruit
The quantum meruit claim asserted in count VIII, as pled, is based on the provision of tax credit consulting services of a value exceeding the amount paid. This count appears to be, in substance, an alternative to count VII, offered in case that count fails for lack of consideration for the oral amendment, or otherwise. Quantum meruit is a theory of recovery based on unjust enrichment. See J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793-94 (1986). Recovery in quantum meruit is permitted where a party has provided goods or services of value to another, under circumstances in which the recipient would reasonably expect to pay for the benefit received, but no contractual remedy is available. See id. Where an express contract governs the circumstances, resort to quantum meruit is not available. See Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993) (“recovery in quantum meruit presupposes that no valid contract covers the subj ect matter of a dispute”).
Here, as set forth supra, a written contract provides for Rufus Choate Associates to perform specified work, for total compensation of $75,000, and also provides for compensation on an hourly basis in case of additional services. The complaint as pled leaves unclear whether the claim is based on the services provided for in the contract, or additional services beyond the contract. The Court therefore cannot determine whether the claim is barred by the contract. Accordingly, the Court will dismiss this claim with leave to amend.
CONCLUSION AND ORDER
For the foregoing reasons, the defendants’ Motion to Dismiss is ALLOWED in part, and DENIED in part, as follows. Counts I and v. are dismissed in their entirety, with prejudice. Counts III, IV, and VI are dismissed with prejudice as to defendant McDonnell only. Counts VII and VIII are dismissed without prejudice; plaintiff is granted leave to file an amended complaint as to these counts within thirty days of this date. Such amended complaint shall eliminate the counts ordered dismissed with prejudice. In all other respects the motion to dismiss is denied.

The complaint identifies the plaintiffs as Elaine B. Flnbuiy and “Elaine B. Finbury d/b/a Rufus Choate Associates, [ ] a limited partnership.” The allegation leaves some uncertainly as to whether Rufus Choate Associates is merely a name under which Elaine Flnbuiy does business, or is a separate entity organized as a limited partnership.

he allegations regarding this agreement appear only in Count VII, not in the general recitation of facts incorporated into each count. The complaint does not append a copy of this document, and does not describe it in any detail, but defendants have provided a copy in connection with the present motion.

Flnbury suggests that “a reasonable rate of return can be inferred from the context of the contract.” She cites America’s Favorite Chicken Company v. Samaras, 929 S.W.2d 617, 623-24 (Tex.App. 1996). There, as the Court noted, the parties had acknowledged the existence of a binding obligation, and the contract, which referred to a “market rate” of return on which lease payments would be based, “was about as definite and certain as the parties could have made it under the circumstances,” id. at 624, in that the market rate would have to be based on market conditions at the time the lease took effect, which was well after the agreement. No comparable circumstances exist here.

The fraud claim is viable against McDonnell as well as Architectural, since he is the person alleged to have made the misrepresentation. See Townsends, Inc. v. Beaupre, 47 Mass.App.Ct. 747, 751-52 (1999), citing Refrigeration Discount Corp. v. Catino, 330 Mass. 230, 235 (1953).

The defendants have not raised any question based on Architectural’s non-profit status in relation to the trade or commerce element under G.L.c. 93A. See Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 23-24, cert. denied, 522 U.S. 1015 (1997).