Krupp, Peter B., J.
This action is before the court on a motion to dismiss by defendants Synkinetics, Inc. (the “Company”) and Santo P. Pasqualucci (“Pasqualucci”) (docket #15), and a separate motion to dismiss by defendant Carl J. Yankowski (“Yankowski”) (docket #13). Both motions are filed pursuant to Mass.R.Civ.P. 12(b)(6). After hearing on March 13, 2013, for the following reasons, each of the motions is ALLOWED in part and DENIED in part. In light of the fact that it took the court more than four months to schedule the motions to dismiss for hearing, the court includes in its order new tracking order dates.
Background
The Verified Complaint (“CompV j alleges the following facts, which the court accepts as true for purposes of deciding the motion to dismiss. Iannacchino v. Ford Motor Co. (“Iannacchino”), 451 Mass. 623, 636 (2008).
Plaintiff Kent E. George, Sr. (“George”) has been employed by the Company for more than 12 years. He remains employed by the Company. During the last decade, George’s responsibilities at the Company have gradually been reduced. George was hired in July 2000 as the Company’s CEO, President and Chairman of the Board of Directors. Compl ¶5. In 2005, Pasqualucci became involved with the Company and provided the Company with most of its capital needs. Pasqualucci became Chairman of the Board. George retained the titles of CEO and President, but his Board position was reduced to Vice Chairman. Id. ¶11. Despite his position as CEO and President, it was Pasqualucci, not George, who controlled the compensation of Company employees, including George’s compensation. Id. ¶¶12, 13. In January 2007, the Company’s Board appointed Pasqualucci to the position of Executive Director, the most senior officer position, such that George, who still retained the title of President, reported to Pasqualucci. Id. ¶14.
In September 2011, the Company hired Yankowski to replace George as its CEO, President and Vice Chairman of the Board. Id. ¶22. George was demoted to chief operating officer (“COO”). He remained a member of the Board. Id. ¶22.
Over the course of his employment, George was paid a combination of salary and deferred compensation, although much of his salary was deferred or went unpaid, id. ¶¶6-9, 13, 15, 24, 25, while other significant Company expenses were paid. Id. ¶¶15, 23. George contends that the Company owes him more than $1.4 million in salaiy and deferred compensation accumulated over the years. Id. ¶29.
As to the Company’s earlier deferral of George’s compensation, the Company reaffirmed its obligations to pay George accrued salary and deferred compensation, including in March 2007 in response to George’s request, and in later years on federal tax filings with the IRS. Id. ¶¶19, 21. George alleges that since Yankowski was hired, “the defendants” have failed to pay his salary, have reduced his salary, and have entered into a plan placing George’s compensation behind the payment of other debts of the Company, including payments to Yankowski and Pasqualucci. Id. ¶¶24-30, 37, 38.
George filed this action in August 2012 against the Company and against Pasqualucci and Yankowski individually (together, Pasqualucci and Yankowski are referred to as the “Individual Defendants”). The Verified Complaint alleges claims for violation of the Wage Act, G.L.c. 149, §148 et seq., against all three defendants (Count I), breach of contract against the Company (Count II), promissory estoppel against all three defendants (Count III), quantum meruit against the Company (Count IV), and tortious interference with advantageous relations or advantageous contractual relations against the Individual Defendants (CountV).
*65 The defendants have moved to dismiss some part or all of each of the counts against them. In his papers, and at argument, George clarified and narrowed his position “to streamline his lawsuit and reduce costs,” agreeing to dismiss Count v. entirely and dismiss Count III (promissory estoppel) against Yankowski, see Plaintiffs Opposition to Defendants’ Motion to Dismiss at 2; and to limit his claim under Count I (the Wage Act) to the three-year period prior to his filing of this action (i.e. back to August 14, 2009). See, e.g., Plaintiffs Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Carl J. Yankowski at 4, 15. The court enters these concessions as orders of the court and addresses the defendants’ other issues in turn.
DISCUSSION Rule 12(b)(6)
When presented "with a challenge to the sufficiency of a complaint under Rule 12(b)(6) of the Massachusetts Rules of Civil Procedure, the court must accept as true the well pled factual allegations of the complaint and draw reasonable inferences from those facts in favor of the plaintiff. Iannacchino, 451 Mass, at 636. To survive a Rule 12(b)(6) challenge, the complaint must contain factual allegations which, if true, bring a right to relief above the speculative level, Iannacchino, 451 Mass, at 636, “plausibly suggesting (not merely consistent with)” a basis for relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007). Dismissal is appropriate under Rule 12(b)(6) only where the facts alleged in the complaint are insufficient to support a cause of action.
2. Count I (Wage Act)
Yankowski moves to dismiss the Wage Act claim against him, arguing that George was not an employee under the Wage Act, he (Yankowski) was not sufficiently managerial to be personally liable under the Wage Act, George’s claims are barred by his own “unclean hands” and the in pari delicto doctrine, and in any event he (Yankowski) was only hired in 2011 and so his liability should be limited to the period after he was hired.
Under the Wage Act, “an individual performing any service” is considered “an employee,” unless, in relevant part, “the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact.” G.L.c. 149, §148B. To avoid restricting the remedial nature and plain language of the Wage Act, courts have held a senior manager to be an employee, even if the individual is also statutorily defined to be an employer. See, e.g., Stanton v. Lighthouse Financial Services, Inc., 621 F.Sup.2d 5, 11-13 (D.Mass. 2009) (president); Okerman v. VA Software Corp., 69 Mass.App.Ct. 771, 777-78 (2007) (marketing manager). But see Gabovitch v. First Signs, Inc., 71 Mass.App.Ct. 1124, 2008 WL 2038244 at *2, n.4 (May 14, 2008) (“Massachusetts appellate courts have not yet decided whether, under the wage act, a manager, in certain circumstances, can also qualify as an employee”).
In addition, although George held the position as President of the Company until 2011, he has alleged that the decision about whether to pay his wages was controlled by Pasqualucci and the Board. Compl. ¶¶12, 13, 18-20. He has alleged that since 2007, Pasqualucci has held an officer position senior to George, and that George reported to Pasqualucci. Id. ¶14. After Yankowski was hired as President of the Company, George alleges he was demoted to the position of chief operating officer and his salary was controlled by all three of the defendants. Id. ¶¶22, 24, 25, 28, 30. Given that George’s responsibilities were gradually reduced over time, and that the relevant time period for the Wage Act claim looks back three years from the date of filing the case, G.L.c. 149, §150; Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 375 (2008), i.e., during the period when George had been demoted to vice president and had his stated compensation slashed, I find that George has alleged sufficient facts to support his claim that he should be considered an employee under the Wage Act, if not for all, at least for some, of the relevant period.
As to Yankowski’s personal exposure, George has alleged that Yankowski held the position of CEO and President beginning in 2011. Compl. ¶¶22, 36. The Wage Act defines “(t]he president and treasurer of a corporation and any officers or agents having the management of such corporation” as “the employers of the employees of the corporation” for purposes of liability thereunder. G.L.c. 149, §148. Wiedmann v. The Bradford Group, 444 Mass. 698, 711 (2005) (“president and treasurer... liable under the plain language of the statute”). Thus, Yankowski has statutory exposure under the Wage Act by virtue of his position as President of the Company.[1] Moreover, George has alleged that, from his position of President, Yankowski worked with Pasqualucci to control George’s salary and make sure he (Yankowski) was paid before George. Compl. ¶¶24-26, 28, 37, 38. These allegations are sufficient to allege Yankowski exercised control and management, at least together with Pasqualucci, over the Company for purposes of individual Wage Act liability.
The defenses of “unclean hands” and in pari delicto are uniquely fact-based. Yankowski does not cite the court to any case in which such defenses were successfully interposed to block a Wage Act claim, or were sufficient as a matter of law to support a motion under Rule 12(b)(6). On the present record, the court cannot determine that George exercised such pervasive control over the corporation to bar him from relief under the Wage Act. He has alleged to the contrary. Moreover, some courts have found that such defenses are inapplicable in a claim under the Wage Act. See, e.g., Stanton, 621 F.Sup.2d at 17 (“[T]he defense of in pari *66 delicto cannot be raised by an employer subject to a claim for violation of the Wage Act”). Without deciding this legal question, I find the defenses insufficiently presented on this record to warrant action under Rule 12(b)(6).
Similarly, having found Count I to state a claim under the Wage Act against Yankowski, as President of the Company, the court cannot determine the exact extent of his exposure, or whether it is limited to wages unpaid after Yankowski was hired. George has alleged directly and by reasonable inference that Yankowski was aware of the past-due wages and deferred compensation owed to George, but that Yankowski took steps, together with Pasqualucci, to make sure he (Yankowski) was paid before George. The court simply cannot say at this stage of the case that George’s claim against Yankowski under the Wage Act is limited to wages that came' due and were not paid after Yankowski was hired. For these reasons, Yankowski’s motion to dismiss Count I is denied.
3. Count II (Breach of Contract)
In Count II, George alleges that the Company breached its contract with him by failing to pay him unpaid wages and deferred compensation. The Company has moved to dismiss so much of Count II as alleges a breach of contract to pay George’s deferred compensation, arguing that, by George’s own pleading, there was never a meeting of the minds about the specific condition precedent to payment of the deferred compensation, and therefore there has been no breach of the promise to pay the deferred compensation. Specifically, the Company points to the portion of the Verified Complaint, which alleges that in 2001 the Company’s Board voted to pay George’s promised annual salary of $150,000, Compl. ¶6, as an annual salary of $90,000 and the remaining $60,000 deferred “until such time as the Company generated ‘sufficient’ revenue which was never specified.” Id. ¶7 (emphasis added). (Thereafter, the Company deferred certain other compensation to George, apparently subject to the same ambiguous repayment terms. Id. ¶¶13, 15.)
George has adequately pled the existence of a promise to pay the deferred compensation, even if the precise timing of the repayment obligation was not fully defined. The complaint evidences the clear intention of the Company to be bound by its promises to pay George the full amount of the compensation deferred in 2001 and deferred on a number of occasions thereafter. The Company repeatedly recommitted to George and others its obligation to pay George his deferred compensation. The mere fact that the alleged repayment precondition—that the Company have “ ‘sufficient’ revenue”—was not clearly defined, does not mean the Company either did not agree to pay George, or can be freed from its obligation to him. Indeed, even under the Company’s own interpretation, it must have had a definition of “ ‘sufficient’ revenue” in mind, even if not shared by George, which would have triggered a payment obligation.
What is lacking in George’s complaint on a breach of contract theory is any allegation of when the Company was obligated to pay the deferred compensation. Did the Company breach its agreement to pay deferred compensation to George, when the Company raised funds and chose to pay third-party vendors instead of George, see Compl ¶15—a decision in which George likely had the opportunity to participate—if the Company would have had to default in payment of vendors (or, worse, if it would have ended the Company’s ability to develop its technology or operate effectively)? Did the Company breach its agreement to pay George’s deferred compensation if there were sufficient funds at some point to pay 10% of George’s deferred compensation, but none was paid? George has not alleged how the parties were to determine when a breach in the promise to pay the deferred compensation has occurred. On George’s allegations, the mere fact that the deferred compensation has not yet been paid is not enough. These questions might ordinarily be issues for discovery, but here George himself has pled the ambiguity, i.e., the fact that the parties “never specified” when revenue would be “sufficient” to trigger the obligation to pay George’s deferred compensation.
For these reasons, the court grants the Company’s motion to dismiss so much of Count II as alleges a breach of contract with respect to deferred compensation. George suggests, and the court agrees (see above), that he has alleged that the Company promised to pay his deferred compensation at some point when revenues were sufficient. The mere fact that the time of payment was not more clearly defined does not mean the Company did not agree to pay George deferred compensation at some point. The court will accordingly permit George fourteen (14) days within which to file an amended complaint seeking declaratory relief as to the contract claim for deferred compensation.
4. Count III (Promissory Estoppel)
Following George’s concessions, see, supra at 3, the promissory estoppel claim (Count III) remains only as against the Company and Pasqualucci. The Company and Pasqualucci move to dismiss it, arguing that George has failed to allege sufficiently definite representations regarding the deferred compensation, failed to allege reasonable reliance, and failed to allege having acted in reliance on those representations to his detriment. Pasqualucci also contends that he should not face a promissory estoppel claim because there is no allegation that he made any representations in his personal capacity.
To state a claim for promissory estoppel, a plaintiff must allege “(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) *67 detriment as a consequence of the act or omission.” Sullivan v. Chief Justice for Admin, and Management oftheTrial Court, 448 Mass. 15, 27-28 (2006), quoting Bongaards v. Millen, 440 Mass. 10, 15 (2003). Here, George has alleged each of these elements with sufficient facts to make a basis for relief plausible.
George has alleged numerous representations about the Company’s agreement to pay him salaiy and deferred compensation, see, e.g., Compl ¶¶13, 18, 19, which, it can reasonably be inferred, were intended to induce George’s reliance. Unlike in the context of the breach of contract claim, however, the court cannot tease out what role the alleged promises regarding salary and those regarding deferred compensation played either for the Company in inducing reliance, or for George in actually relying on the representations to his detriment. The promises, as alleged, appear inextricably linked. Questions about the reasonableness of George’s reliance, or the extent of his actual reliance to his detriment, are fact-intensive ones, usually reserved for a jury. See, e.g., Suominenv. Goodman Indus. Equities Management Group, LLC, 78 Mass.App.Ct. 723, 733-34 & nn.12, 14 (2011) (“forbearance of a colorable legal claim alone can make out ‘legal detriment’ ” for purposes of promissory estoppel; “whether reliance was reasonable is more typically treated as a question of fact to be resolved by the jury”), citing Cannon v. Cannon, 69 Mass.App.Ct. 414, 423 (2007) (reversing dismissal of promissory estoppel claim). This is not a case in which the facts alleged, and the reasonable inferences to be drawn therefrom, permit the conclusion that the defendants made representations either that they did not intend, or that George did not understand, to be commitments that would be honored by the Company. Cf. Rhode Island Hosp. Trust Nat. Bank v. Varadian, 419 Mass. 841, 850 (1995).
Although Count III is sufficient to state a claim against the Company, it fails in its allegations against Pasqualucci personally. Nowhere in the complaint does George allege that any representations or promises were made by Pasqualucci individually, as opposed to on behalf of the Company. Accordingly, Count III fails to state a claim for promissory estoppel against Pasqualucci. See Finbury v. Architectural Heritage Foundation, Inc., 23 Mass. L. Rptr. 367, 2007 WL 4442331 at *5 (Mass.Super. Nov. 19, 2007).
For these reasons, the Company’s motion to dismiss Count III is denied. Count III is dismissed as against Pasqualucci.
5. Count IV (Quantum Meruit)
The Company moves to dismiss George’s quantum meruit claim arguing that George comes to the case with “unclean hands,” having served as the Company’s President, CEO and Board Chairman prior to Pasqualucci joining the company. This argument does not address the fact that George seeks quantum me-ruit for the later periods, after Pasqualucci assumed control, and even after Yankowski took over as President and CEO. Moreover, as discussed above, the “unclean hands” defense is a fact-based defense not susceptible, at least in this instance, of determination on a Rule 12(b)(6) motion. The Company cites the court to no case to the contraiy. For these reasons, the Company’s motion to dismiss Count IV is denied.
6. Statute of Limitations
Finally, the Company asks the court to determine that the only permitted look-back period in this case will be six years on Counts II, III and IV. G.L.c. 260, §2. Given the allegations in the complaint, the court cannot circumscribe George’s case in that way at this time. First, Counts II, III and IV survivebhe defendants’ Rule 12(b)(6) challenge in some form. Second, George has alleged that compensation for periods more than six years prior to the filing of this action were reaffirmed and essentially re-promised within the six-year limitations period. Compl. ¶¶19, 21. Taking the reasonable inferences to be drawn from these allegations, the court cannot say that George is barred as a matter of law from basing his claims on Counts II, III and IV—or taking discovery—on events that occurred, and compensation that was initially promised, before August 14, 2006. See G.L.c. 260, §13; Epstein v. Siegel, 396 Mass. 278, 279 (1985).
For these reasons, it is ORDERED as follows:
ORDER
1. Defendants’ motions to dismiss are ALLOWED in part to the extent that George’s claim in Count I under the Wage Act is limited to three years prior to the date of filing (i.e. back to August 14, 2009); Count II, only as it relates to the claim for deferred compensation, is dismissed; Count III is dismissed as against defendants Pasqualucci and Yankowski; and Count v. is dismissed. Defendants’ motions to dismiss are otherwise DENIED.
2. Plaintiff shall be permitted 14 days from the date of this Order to file an amended complaint to present a contract-based claim against the Company for declaratory judgment regarding George’s alleged entitlement to deferred compensation. Defendants shall file their answer to the amended complaint, or to the complaint if no amended complaint is filed, by April 16, 2013.
3. The tracking order is modified as follows: (a) discovery shall be completed by September 10, 2013; and (b) any motion to be filed under Rule 56 shall be served pursuant to Superior Court Rule 9Aby October 10, 2013, and filed by November ! 1, 2013. If plaintiff seeks to file a Rule 56 motion or cross motion against more than one of the defendants, plaintiff shall file a single consolidated Rule 56 motion as against all of the defendants against which plaintiff wishes to move, subj ect to all requirements (including page limitations) set out in Superior Court Rule 9A. If the defendants seek to file a Rule 56 motion (or cross motion) against *68 plaintiff, the defendants together shall file a single consolidated Rule 56 motion, subject to all requirements (including page limitations) set out in Superior Court Rule 9A.
4. The court shall schedule a Final Pretrial Conference in mid-December. If a Rule 56 motion is filed, the summary judgment motion will be heard at the time set for, and in lieu of, the Final Pretrial Conference.
5. The dates set herein shall not be modified except for good cause shown.

In ruling on this Rule 12(b)(6) motion, the court has not considered the affidavits submitted by Yankowski. In any event, they would not change the court’s legal conclusion that the plain language of the Wage Act renders the President of the Company an “employer” for purposes of Wage Act liability.