Gants, J.
According to her complaint, in July 1997, the defendants fired plaintiff, Elizabeth Clark (“Clark”), from her employment with the South Mid-dlesex Opportunity Council, Inc. (“SMOC”) because she revealed to an employee at the Massachusetts Executive Office of Health and Human Services (“EOHHS”) that SMOC had furnished false data for inclusion in the Annual Report to the United States Department of Housing and Urban Development (“HUD”). Clark’s complaint alleges five counts:
1. breach of her at-will employment contract in violation of public policy;
2. breach of her at-will employment contract in violation of the covenant of good faith and fair dealing;
3. breach of her employment contract arising out of SMOC’s Personnel Policies and Procedures Manual;
4. civil conspiracy; and
5. Violation of the Massachusetts Civil Rights Act, G.L.c. 12, §§11H and 111.
The defendants now move for summary judgment on all counts. After hearing and for the reasons stated below, the defendants’ motion for summary judgment is ALLOWED IN PART AND DENIED IN PART.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmov-ing party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently the facts stated below are presented in the light most favorable to *543 Clark and should not be misunderstood as findings of the Court.
In 1996 and 1997, SMOC administered a federal grant to provide housing services for homeless individuals in four different regions in Massachusetts, including the region known as Metrowest. On or about August 1996, Clark was hired by SMOC as its Housing Administrator to handle administrative duties regarding housing issues and casework in the three regions in Central Massachusetts, including Metrowest. Until May 1997, Clark reported to Carol Greeley, the Director of the Mobile Outreach Team, and received favorable reviews for her work. When Greeley left SMOC in May 1997, she assigned Clark various administrative duties that she previously had handled, including the preparation of the Annual Report to HUD.
Shortly after Greeley left SMOC, Clark was called into a meeting with the defendant Maryellen Coffey (“Coffey”), who served as SMOC’s Chief Operating Officer, and the defendant Susan Gentili (“Gentili”), who served as SMOC’s Director of Shelters. In that meeting, Clark presented the spreadsheets showing the number of housing and employment placements in the Metrowest region, which indicated only 24 placements for the year. Coffey declared these numbers were “too low,” and said she could not give those numbers to Leslie Serafine of the Massachusetts Housing and Shelter Alliance (“MHSA”), the agency to which SMOC reported. Gentili then joined the meeting and, in response to Coffey’s request for a “better” estimate, estimated that 200 persons were placed in SMOC housing in Metrowest in the past year. Coffey decided to forward to Serafine Gentili’s estimate of 200 persons rather than the accurate number of 24 reflected in the spreadsheets. Clark told Coffey that this number was wrong and should not be forwarded. As a result, Coffey changed her job by limiting her work to two specific projects: a housing manual and a curriculum for case managers. She also told Clark to report to Gentili and to no longer work on Metrowest housing placement.
Later, Gentili asked about the Annual Report to HUD. Clark said she was getting the housing and employment advocates to provide her with the proper numbers. Gentili said she would go to her office and fax Clark the housing numbers she should use for the Metrowest region for the Annual Report. Clark said she already had numbers from the previous housing advocate in Metrowest and expressed concern that Gentili’s numbers may not be justified. Gentili told her that “a decision had been made” and she should “accept it and just move on.” The next morning, Clark found a memorandum on her desk ordering her to turn over the HUD Annual Report and supporting documents to Gentili, which Clark did. However, it had been part of Clark’s regular duties to compile the housing placement numbers for Serafine at MHSA, Deborah Conley at the State Department of Transitional Assistance (“DTA”), and Ed Chase at EOHHS, and she faxed to these persons the monthly and end-of-year housing numbers, using the accurate numbers that had been compiled and not the inflated numbers generated by Gentili. A few days later, Chase called Clark to clarify the numbers in her report. Clark explained the numbers and shared her concerns that the numbers being reported by SMOC, including the Metrowest numbers, may not be accurate. Chase said he did not want Clark to lose her job and said that he would ask Conley to speak with Coffey. About ten days later, in July 1997, Gentili called Clark into her office. She told Clark that she had reports that Clark had spoken to people “about things I shouldn’t have mentioned,” that she was fired, and that she needed to leave that day. As Clark was leaving, Gentili took her aside and told her that she had better not talk to anyone about this.
DISCUSSION
To prevail on summary judgment, the moving party must establish that there is no genuine issue of material fact on every element of a claim and that it is entitled to judgment oh that claim as a matter of law. See generally Mass.R.Civ.P. 56(c); Highlands Insurance Co. v. Aerovox Inc., 424 Mass. 226, 232 (1997). Where, as here, the party opposing summary judgment has the burden of proof at trial, the moving party is entitled to summary judgment if it “demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Id. It is sufficient to demonstrate that “proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
Since each count in the complaint raises separate issues of law, I will discuss each in turn.
1. Count One: Breach of Clark’s At-Will Employment Contract in Violation of Public Policy
Despite the general rule that “(e]mployment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all,” Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988), the Supreme Judicial Court has recognized exceptions “when employment is terminated contrary to a well-defined public policy.” Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992). Thus, “[rjedress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers’ compensation *544 claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury).” Id. quoting Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 149-50 (1989). Redress is also available “to an at-will employee who was discharged in retaliation for his cooperation with a law enforcement investigation concerning his employer.” Id., citing Flesner v. Technical Communications Corp., 410 Mass. 805, 811 (1991).
Viewing the evidence in the light most favorable to the plaintiff, Clark was fired because she provided accurate monthly and end-of-year housing numbers to three state agencies — MHSA, DTA, and EOHHS— rather than the inflated numbers generated by Gentili, and then informed EOHHS that other numbers reported by SMOC may not be accurate. It is a violation of state and federal law knowingly to provide false information to state and federal agencies for the purpose of obtaining continued funding. See, e.g., G.L.c. 268, §6; 18 U.S.C. §1001; 18 U.S.C. §666. Therefore, it would be a breach of contract in violation of public policy if Clark was fired because she refused to commit such a state or federal violation. See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. at 149-50. Moreover, it would also be a breach of contract in violation of public policy if Clark was fired because she cooperated with EOHHS in uncovering the fact that such a violation had occurred and assisted in preventing state or federal funds from being allocated based on this false information. See Flesner v. Technical Communications Corp., 410 Mass. at 811. However, as a breach of contract action, this claim is cognizable only against SMOC, and not against the defendants Coffey and Gentili individually. Therefore, the motion for summary judgment is denied as to the claim against SMOC of a breach of employment contract in violation of public policy. To the extent that this claim is made against Coffey and Gentili individually, the motion is allowed.
2.Count Two: Breach of Clark’s At-Will Employment Contract in Violation of the Covenant of Good Faith and Fair Dealing
The Supreme Judicial Court has recognized an “implied covenant of good faith and fair dealing” in every employment relationship, including at-will relationships, Fortune v. National Cash Register Corsage., 373 Mass. 96, 102 (1977), but it has limited this cause of action “to cases in which an employer fires an employee and thereby deprives him or her of bonuses, commissions, or wages.” Wright v. Shriners Hospital for Crippled Children, 412 Mass. at 471 n.1. Since there is no allegation that SMOC deprived Clark of any bonuses, commissions, or wages, this cause of action does not apply. Id. Summary judgment on this claim, therefore, must be allowed.
3.Count Three: Breach of Clark’s Employment Contract Arising Out of SMOC’s Personnel Policies and Procedures Manual
SMOC’s Personnel Policies and Procedures Manual, which the plaintiff was required to review and sign when she commenced her employment with SMOC, provides that SMOC will generally use progressive discipline unless there is serious misconduct or unless corrective measures would not be appropriate. She alleges that the Manual constituted an employment contract with her, and that this provision regarding progressive discipline was violated by SMOC’s decision to terminate her rather than warn or suspend her. This same Manual, however, also provides in bold print on its very first page:
These Personnel Policies are intended as a general guide in determining appropriate policies of employment and in no way constitute a contract of employment or employment terms. SMOC reserves the right to discontinue, amend or replace any policy at its discretion without notice.
Manual at 1. In view of this plain language, Clark could not reasonably have concluded that SMOC intended the Manual to create an employment contract or to establish the terms of such employment. See O’Brien v. New England Telephone, 422 Mass. 686, 693-95 (1996). Summary judgment is allowed on this claim.
4. Count Four: Civil Conspiracy
To prevail on a civil conspiracy claim, the plaintiff must prove one of two theories: either that the defendants engaged in concerted action to commit a tort against the plaintiff or, if there was no independent basis for imposing tort liability, that the defendants combined to accomplish an unlawful purpose (or a lawful purpose by unlawful means) through some peculiar power of coercion over the plaintiff that they would not have had if they acted individually. See Kurker v. Hill, 44 Mass.App.Ct. 184, 188 (1998). As shown in this memorandum, the defendant’s decision to terminate Clark’s employment may have breached her at-will employment contract in violation of public policy, but it did not constitute a tort. Indeed, no common law tortious conduct is even alleged. Since there was no tort, the defendants cannot be alleged to have conspired to commit one. Nor is there any evidence that the defendants had some peculiar power of coercion over the plaintiff that they would not have had if they acted individually. The civil conspiracy claim, then, may not survive summary judgment.
5. Count Five: Violation of the Massachusetts Civil Rights Act
Clark contends that she enjoyed the civil right not to commit criminal acts and that, by firing her, the defendants attempted to coerce her economically to surrender that right, in violation of the Massachusetts Civil Rights Act (“the Act”), G.L.c. 12, §§11H and 1II. Her claim under the Act fails on two grounds.
*545 First, as explained in great detail in Buster v. George E. Moore, Inc., Middlesex Superior Court No. 97-637-F (April 27, 2000) at 32-43, this Court interprets a cause of action under the Act to require an actual or potential physical confrontation accompanied by a threat of harm, not simply economic coercion or pressure. There is no such allegation in this case.
Second, even if economic coercion were within the purview of the Act, this claim would nonetheless fail because the economic coercion alleged — her termination by the defendants — was not intended to pressure her to violate the law or to forebear from cooperating with state and federal agencies. Rather, viewed in the light most favorable to the plaintiff, it was intended to punish her for refusing to violate the law and for disclosing the falsity of the data that had been submitted to EOHHS. “[A] direct deprivation of rights, even if unlawful, is not coercive because it is not an attempt to force someone to do something the person is not lawfully required to do.” Freeman v. Planning Board of West Boylston, 419 Mass. 548, 565 (1995), cert. denied, 116 S.Ct. 337 (1995); Swanset Development Corp. v. Taunton, 423 Mass. 390, 396 (1996). Phrased differently, the defendants did not fire Clark to silence her; they fired her to punish her for her earlier refusal to remain silent. See Buster at 42-43.
Summary judgment is allowed on this claim.
ORDER
For the reasons stated above, the defendants’ motion for summary judgment is ALLOWED as to Counts Two, Three, Four, and Five with respect to all defendants, and as to Count One with respect to the defendants Coffey and Gentili. The motion for summary judgment is DENIED as to Count One with respect to the defendant SMOC and the case may proceed on that lone claim.