van Gestel, J.
This matter comes before the Court on the seldom used, and even less successful, motion for a more definite statement. The defendant, Walsh Construction Company of Illinois (“Walsh”), says that the complaint of the Massachusetts Highway Department and the Massachusetts Turnpike Authority (collectively “MHD/MTA”) is impermissibly vague in light of the complexity of the underlying situation.

BACKGROUND

What is involved is an $80 million[2] public construction contract for the finish work on the Ted Williams Tunnel under Boston Harbor, connecting South Boston with Logan Airport in East Boston. Walsh claims to have utilized more the 600,000 man-hours in labor and to have purchased over $20.5 million in materials from vendors worldwide. The work spanned in excess of three miles of tunneled roadway and required the installation of more than 650,000 squarefeet of ceiling panels; 30,000 linear feet of stainless steel handrail; 60,000 linear feet of polymer panel barriers; 600,000 square feet of ceramic tile; 24,000 linear feet of duct-edge seal; 25,000 anchor bolts; 100,000 linear feet of light trough; and 13,000 tons ofbituminous concrete pavement. Walsh claims to have used more than 12 subcontractors.
The tunnel was opened — and therefore at least substantially completed — on December 15, 1995. Walsh says that it has had no contact with MHD/MTA for over four years. This suit was filed on December 14, 2001, one day under six years after the tunnel opened.
In one sense, the complaint is a model of compliance with Mass.R.Civ.P. Rule 8(a). It is three pages in substantive assertions, with the fourth containing only the signatures of counsel for the two plaintiffs. There are 15 numbered paragraphs and just two counts, one for breach of contract and the second for indemnification. Only one paragraph in the whole complaint makes any allegations or assertions regarding what Walsh did or did not do. This is paragraph numbered 6, and it reads in its entirety as follows:
Walsh began its work under the C05B1 contract, but the work performed by Walsh is defective in that it fails to comply with the Contract Documents, including plans and specifications prepared by Domenech & Hicks.
The following paragraph says, “As a result of Walsh’s defective construction, Plaintiffs have incurred substantial costs to correct deficiencies on the Project.”

DISCUSSION

There is a tension between the notice pleading requirements of Rule 8(a) and the provision permitting a motion for a more definite statement under Rule 12(e). See Smith and Zobel, Rules Practice, 6 M.P.S., Sec. 12.19. “In the system of notice pleading which the Rules embody, discovery, not specifications and motion practice, serves the purpose of specifications and particulars. The motion for more definite statement is appropriate when a pleading is so impenetrable, so vague, ambiguous or muddled that a party cannot reasonably be expected to frame a response.” Id.
Rule 8(a) requires “a short and plain statement of the claim showing that the pleader is entitled to relief, and ... a demand for judgment for the relief to which he deems himself entitled.” Smith and Zobel, in the same volume mentioned above, state, “Pleadings under the Rules serve primarily to give fair notice of claims or defenses, and secondarily to establish the nature of litigation for purposes of res judicata.” Id. at Sec. 8.1. They point out, “Although Rule 8 encourages and in fact requires brevity in pleadings, the emphasis on ‘notice’ should not induce vague or ambiguous pleading.”
“Appropriate defense motions and answers are not possible in the absence of a complaint that, unsupplemented by oral or written material, sets forth plainly, concisely, and directly the plaintiffs claims.” Mmoe v. Commonwealth, 393 Mass. 617, 620 (1985).
The Appeals Court, in Epstein v. Liberty Bank & Trust Co., 12 Mass.App.Ct. 1000 (1981), in declining to dismiss a complaint that said merely that the plaintiff paid $9,875 more than was due on a mortgage note without further explanation of why, pointed out, “The defendant is not without means to smoke out the nature of the plaintiffs grievance” and suggested a motion for more definite statement pursuant to Rule 12(e).
It is not just the parties to the pleadings that need to know what they are charging and how to respond thereto. The Court maybe asked to assess compliance *609 with the pleading of special matters (Rules 9 and 23.1), to address motions to dismiss that rely solely on the pleadings (Rule 12(b)), to grant judgment on the pleadings (Rule 12(c)), to determine what maybe a compulsory or permissible counterclaim (Rule 13), to address third-party practice (Rule 14), to determine the real party in interest (Rule 17), to consider the joinder of claims or persons (Rules 18, 19,20 and 21), to address motions to intervene (Rule 24), and to deal with a whole array of issues under the discovery rules (Rules 26 through 37), any and all of which require at least some rudimentary understanding about what is in issue or what may be relevant or may lead to relevant evidence. In short, it is not just fair notice to the defendant that may be significant; the Court has a need for such notice as well.
Here, the complaint tells the defendant and the Court that there was a contract and that it was breached, as a result of which the plaintiffs claim to have been damaged, and nothing more. Even the most basic details — e.g., when the breach occurred, what the breach consisted of, and how or in what manner the breach occurred — are all left unmentioned. It is not “fair notice” to the defendant or the Court to simply say that there was a contract and it was breached. Rule 8(a) requires more than that, and Rule 12(e) is a proper vehicle by which what is absent maybe smoked out.

ORDER

For the foregoing reasons, the defendant’s motion for a more definite statement is ALLOWED. The plaintiffs shall have until July 5, 2002 to comply. Thereafter, the defendant is requested to notify the Court when it files a responsive pleading to the more specific complaint, so that a Rule 16 scheduling conference may be established.

 In para. 5 of the complaint it is alleged that the contract when signed was for $49,495,000. It is Walsh’s memorandum that targets the ultimate cost at $80 million.