Muse, J.
Plaintiff Julia H. Riley (“plaintiff’) brought this action alleging breach of contract, wrongful termination, breach of implied covenant of good faith and fair dealing, and breach of duty against Biogen, Inc., and James D. Green (“defendants”). This matter is now before the Court on the defendants’ motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(6).. For the reasons set forth below, the defendants’ motion to dismiss is ALLOWED in part and DENIED in part.
BACKGROUND
This case arises out of an employment relationship between the two parties.[1] In June 1997, the plaintiff was hired by Biogen, Inc. (“Biogen”) to be Manager of Development.[2] In 1998, Biogen marketed four drugs which included filings with the Securities Exchange Commission (“SEC”) and began clinical testing of these drugs on humans.[3] The plaintiff, responsible for reviewing the test data, allegedly discovered serious and dangerous flaws in the research and pre-clinical trials which severely compromised their safety and efficacy. The plaintiff informed the defendants of the problems with each drug, and advised' them of her claim that they were not safe for human use.[4] Plaintiff claims that Biogen, with this knowledge, either filed false or misleading reports to the Food and Drug Administration (“FDA”) without revealing any of the potentially dangerous side effects of the drugs, or failed to file the proper reports. On February 22, 1999, the plaintiff was allegedly terminated as a result of her whistle-blowing activities in complaining to the managers, executives, and directors of Biogen’s dangerous and fraudulent practices.
DISCUSSION
A Motion to Dismiss shall be granted when “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” General Motors Acceptance Corp., v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992), quoting Nader v. Citron, 372 Mass. 96, 98 (1977). In making this determination, the court must treat the allegations in the complaint as true and the plaintiff is entitled to all favorable inferences. Id. at 584.
I. Count I (Breach of Contract) & Count IV (Breach of Duty)
The plaintiff contends that she was granted stock options under her employment contract, either express or implied, and that Biogen had a duty to reveal information about the drugs, especially concerning their defects and dangerousness. She further contends that Biogen’s failure to reveal any defects or dangerousness amounted to a breach of contract and breach of duly because that failure rendered her stock options worthless, since she had inside information which, under applicable securities law, prevented her from exercising the option or to sell her stock.
A. Breach of Contract
The plaintiff alleges a novel and interesting theory for breach of contract, however, her allegation is not grounded on facts. As a preliminary matter, the plaintiff does not refer to any provision of any purported “contract” that Biogen breached. It “is not ‘fair notice’ to the defendant or the Court to simply say that there was a contract and it was breached.” Mass. Highway Dept. v. Walsh Construction Co. of Illinois, 14 Mass. L. Rptr. 608 (Mass.Super.Ct. 2002). Furthermore, the plaintiff has failed to point to any provision in the “contract” which indicates when and how drug information would be dispersed.
Additionally, by her own admission at the hearing, the plaintiff has failed to establish any common-law duty that Biogen was obligated to provide the plaintiff with “meaningful, valuable, and useful stock options and employee stock purchases” as alleged in her complaint. Moreover, the plaintiff has failed to establish any contractual rights to patents.[5] Therefore, her claim for breach of contract fails and must be dismissed.
B. Breach of Duty
The plaintiff alleges that Biogen breached a duty to reveal any adverse findings so that she could exercise her rights to sell her Biogen stock. The plaintiff herself characterizes this claim as novel.[6] This Court agrees, and upon review of the record, finds that the plaintiff has failed to establish any duty, statutorily or otherwise, that Biogen had to disclose information to enable the plaintiff to exercise her rights as to Biogen stock.
Therefore, this count too must also be dismissed.
*368 II. Count II (Wrongful Termination) & Count III (Breach of Implied Covenant of Good Faith and Fair Dealing)
A. Wrongful Termination
The plaintiff claims that she was terminated because she complained to management of Biogen’s dangerous and fraudulent practices. She contends such practices posed great and potential danger to humans.
Generally, an at-will employee may be terminated at any time for any reason or for no reason at all. See Folmsbee v. Tech Tool Grinding & Supply, 417 Mass. 388 (1994). However, an exception does exist to the traditional doctrine that at-will employees may be discharged for any reason or no reason at all, where the discharge is for reasons that violate public policy. See Flesner v. Technical Communications Corp., 410 Mass. 805 (1991); DeRose v. Putnam Management Co., Inc., 398 Mass. 205 (1986). Whether the plaintiffs termination falls within the public policy exception is a question of law for the judge to decide, not the jury. See Smith-Pfeffer v. Superintendent of the Walter F. Fernald State School, 404 Mass. 145, 151 (1989).
The Court must determine whether, assuming the plaintiff was fired because of her complaints and intent to whistleblow on Biogen’s fraudulent activities, such conduct falls within the public policy exception. The defendants argue that the exception must be viewed so narrowly to include only those instances where a plaintiff can point to a violation of a “well-established public policy” as set forth in Shea v. Emmanual College, 425 Mass. 761, 762 (1997). Applying that standard, this Court does not agree with the defendant’s interpretation that the standard is so narrow as to exclude the plaintiffs allegations.
“Our cases have not attempted in general terms to identify those principles of public policy that are sufficiently important and clearly defined to warrant recovery by an at-will employee who is discharged for engaging in .. . particular conduct.” Mello v. Stop & Shop, 402 Mass. 555, 557 (1988). However, there is authority to support a finding that plaintiffs conduct in this case, fits the exception. In Hobson v. McLean Hosp. Corp., the court stated that “where an employee at will alleges that she was discharged because she enforced safety laws which were her responsibility to enforce, she states a claim for discharge in violation of public policy.” 402 Mass. 413, 416 (1988). If the employer discharges an at-will employee for fulfilling her duty to assure the employer’s compliance with the law involving public safely, public policy considerations warrant recovery. Id.
This Court is also persuaded by holdings that whistleblowing on fraud and false claims, even when that whistleblowing is confined within the company, is sufficiently important to command the invocation of the exception. Smith v. Mitre Corporation, 949 F.Sup. 943, 951 (Mass. 1997); Hinchey v. Nynex Corp., 144 F.3d 134 (Mass. 1998) citing Shea, supra, (internal or external complaints made about an alleged violation of criminal law, or “whistleblowing” allows legal redress); GTE Products Corp. v. Stewart, 421 Mass. 22 (1995). See also Mello, supra (complaints do not have to be lodged with public authorities); Flesner, supra. A policy that protects an at-will employee who, in good faith, reports criminal conduct in her place of employment to public authorities, but does not protect an at-will employee who in good faith reports such conduct to her superiors, is illogical. Shea, supra, at 763.
In the present case, the plaintiffs claims are clearly within these parameters as she alleges she was discharged because of her complaints that the defendants falsified and concealed reports allegedly in violation of 18 U.S.C.A. §1001[7] and 21 U.S.C.A. §333(b).[8] Such complaints about alleged fraud and false claims pertaining to drugs, when such drugs are being tested on humans, involve a sufficiently important public policy such that she states a claim for termination in violation of public policy.
Faced squarely with this issue as to whether a whistleblower is entitled to protection, this Court concludes that the plaintiff is entitled to protection from the public policy exception to the general rule of at-will employees. This Court also finds that the public policy exception is not so narrowly restricted as the defendants suggest. The defendants rely on King v. Driscoll which held that the public policy exception must be interpreted narrowly so as not to “convert the general rule . . . into a rule that requires just cause to terminate an at-will employee.” 418 Mass. 576, 582 (1994). However, in King, the holding rested on the fact that the claims of wrongful termination arose in the context of a conflict over internal policy matters. King argued that the financial well being of the corporation affected the economy, which in turn would affect the public. Id. The court held that such matters do not elevate the plaintiffs participation in the lawsuit to a protected activity under the public policy exception Id. at 584.
“(T]he myriad of employees without the bargaining power to command employment contracts for a definite term are entitled to a modicum of judicial protection when their conduct as good citizens is punished by their employers.” Boyle v. Vista Eyewear, Inc., 700 S.W.2d 859, 874 (1985). Here, the plaintiff s complaint was in consideration of the potential dangers and risks associated with the use of these drugs by the public and because of the alleged violations of controlling federal codes.
The reporting of suspected criminal activity should not be discouraged by the threat of discharge. Therefore, the Court finds that the plaintiffs allegations, if proven true, afford her protection by way of the public policy exception.
B. Breach of Implied Covenant of Good Faith and Fair Dealing.
As the plaintiffs claim alleging wrongful termination has survived this motion to dismiss, so too must this count impliedly survive.
*369 ORDER
For the foregoing reasons, it is hereby ORDERED that defendants’ motion to dismiss is ALLOWED as to Counts I & IV and DENIED as to Counts II & III.

For purposes of the court’s consideration of the Rule 12 motion, all of the well pleaded factual allegations in the adversary’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false. 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure §1368, at 691 (1969); Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984).

Plaintiffs responsibilities included oversight and program management for preclinical projects at Biogen. Biogen is engaged in the development of pharmaceutical drugs.

 5C8, designed to aid in kidney transplants and other areas as an immunosuppressant; OP-1, to be marketed to patients in renal failure; LFA3T1P, to be marketed for the treatment of psoriasis; and CVT-124, to be marketed as a specialized diuretic for the treatment of congestive heart failure.

Plaintiff notified the scientists, management, and officers of Biogen.

Pursuant to the “Proprietary Information and Inventions Agreement,” all inventions, patents, and copyrights acquired or discovered as a result of tasks assigned by Biogen, or the result from use of its premises, equipment or materials shall be the sole and exclusive property of Biogen.

See Plaintiffs Memorandum in Support of Plaintiffs Opposition to Defendants’ Motion to Dismiss, pg. 13.

This section makes criminal the “knowing and willful”; falsifying, concealing of a material fact; making a materially false, fictitious, or fraudulent statement or representation; or making or use of any false writing or documents knowing the same to contain any materially false, fictitious, or fraudulent statement.

This section makes criminal any violation of reporting requirements by a manufacturer or distributor of prescription drugs.