Gordon, Robert B., J.
BACKGROUND[1]
This case arises out of a failed employment relationship. Plaintiff William Rodden (“Rodden” or the “plaintiff’) alleges that defendants Savin Hill Enterprises d/b/a Savin Hill Specialties (“Savin Hill”) and two of its corporate agents, Karen Diep (“Diep”) and Mateo Van (“Van”), induced him to leave purportedly secure employment at John Dewar & Company (“Dewar”) to come to work for Savin Hill as the General Manager of its new retail establishment. According to Rodden, the defendants desired to acquire his distinctive knowledge, expertise and industry connections in order to design and develop a high-end craft beer and wine store. Rodden alleges that, to induce him to join Savin Hill, the defendants promised that he would be paid a “comparable salary” to the one he enjoyed at Dewar; that he would have unspecified “job security”; that he would serve as Savin Hill’s General Manager “going forward”; and that he would “potentially share in the profits of the business after he made it profitable.” Based on these assurances, Rodden avers that he accepted employment with Savin Hill in the expectation that he would be its General Manager on a “long-term basis.”
Rodden commenced employment with Savin Hill in early February 2014, and promptly proceeded to set up the store’s retail space, select its product inventory, establish its sales and management systems, and secure the necessary licenses and permits to allow it to sell alcoholic beverages commercially. Although Rodden asserts that he performed his duties competently, he maintains that the April 2014 opening of Savin Hill witnessed a marked change in his relationship with the defendants. According to the Complaint, the defendants began to “micromanage” Rodden, regularly “storming into the store [to] demand changes to the way Rodden managed the operation.” The defendants criticized Rodden for “trivial details and aspects *443 of the business [over] which he had no control,” and “blamed him for eveiy minor issue that arose.” Rodden was excluded from hiring and scheduling decisions, yet criticized by senior management for having a store that was “overstaffed.”
The Complaint charges that the defendants had no true intention of employing Rodden on a long-term basis, and that their unstated objective was to exploit his knowledge and talent in the short term in order to set up and license Savin Hill. Once the craft beer and wine shop was up and running as a going concern, Rodden alleges, the defendants’ real design was to bring in a fellow Vietnamese named Dang to replace him as General Manager. To carry out this plan, the defendants began to contrive false criticisms of Rodden’s job performance, and to ascribe blame to Rodden for problems for which he was not personally responsible. This included faulting Rodden for a $437 shortage in the store’s cash register (even though it occurred during a two-day window when Rodden was away from the store), and holding him accountable for selling a bag of potato chips that was a few days beyond its expiration date. It was this latter issue that prompted Diep to advise Rodden that “this is not working out,” and to terminate his employment at Savin Hill after less than four months on the job.
According to the Complaint, the defendants’ asserted dissatisfactions with Rodden were pretextual. To the extent the defendants were displeased with Rodden at all, the reason related to the fact that Rodden repeatedly demanded that he be placed on Savin Hill’s payroll (rather than paid in cash “under the table”) so that all required tax withholdings could be made. The defendants are alleged to have deflected these demands, and Diep at one point stated: “Let me explain something to you, Bill. We’re Vietnamese, we don’t pay taxes.” According to Rodden, the defendants terminated his employment shortly after he requested an IRS Form 1099 so that he could pay his own taxes.
DISCUSSION
The defendants have moved to dismiss the Complaint pursuant to Mass.R.Civ.P. 12(b)(6), asserting that the Complaint fails to state a claim upon which relief can be granted. After a review of the parties’ submissions and an extended hearing, the Court concludes that the defendants’ motion must be ALLOWED IN PART and DENIED IN PART.
STANDARD OF REVIEW
In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must “look beyond the conclusoiy allegations in the complaint,” Curtis v. Herb Chambers 1-95, Inc., 458 Mass. 674, 676 (2011), and determine if the nonmoving party has pleaded “factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (citations and quotation omitted). In doing so, the Court must accept as true “all facts pleaded by the nonmoving party.” Jarosz v. Palmer, 436 Mass. 526, 530 (2002) (citation omitted). It also must accept as true such reasonable “inferences as may be drawn from these facts in the non-moving party’s favor.” Blank v. Chelmsford Ob/Gyn, P.C., 420 Mass. 404, 407 (1995). The Court has done so in the case at bar.
PROMISSORY ESTOPPEL
In Count I of the Complaint, plaintiff has asserted a claim for promissory estoppel. The claim is premised on the same four factual allegations that are repeated throughout the pleading. Specifically, plaintiff charges that, to induce Rodden to leave his position at Dewar and help establish a craft beer and wine store for Savin Hill, the defendants promised him: (1) a “comparable salary” to the one he enjoyed at Dewar; (2) that he would be employed as Savin Hill’s General Manager “going forward” and “long term”; (3) that he would have unspecified “job security”; and (4) that he would “potentially share in the profits of the business after he made it profitable.” (See Compl. at ¶¶16, 20, 27, 31, 62 and 75.) Plaintiff claims that he reasonably relied upon these promises, and left otherwise secure employment at Dewar, only to find that he was discharged from his position at Savin Hill less than four months after being hired. (See Compl. at ¶¶19-20, 37, 52.)
Massachusetts law recognizes a cause of action for promissory estoppel in favor of an employee who relies to his detriment on an employer’s promise. See McAndrew v. School Committee of Cambridge, 20 Mass.App.Ct. 356, 363 (1985). To make out such a claim, the plaintiff must prove each of the following elements: (1) a representation of fact (or acts amounting to the same) intending to induce a course of conduct on the part of the person to whom the representation was made; (2) an act or omission by the person to whom the representation was made resulting from reasonable reliance on such representation; and (3) detriment suffered by the person to whom the representation was made as a result of the act or omission. See Anzalone v. Administrative Office of Trial Court, 457 Mass. 647, 661 (2010); Loranger Construction Corp. v. E.F. Hauserman Co., 376 Mass. 757, 760-61 (1978). The SJC has emphasized that the plaintiff must show reasonable reliance on “an unambiguous promise.” Upton v. JW Businessland, 425 Mass. 756, 760 (1997). Where reliance is unreasonable, such as where the subject promises are vague or indefinite, no claim for promissory estoppel will lie. See, e.g., Upton, 425 Mass. at 760 (no reasonable reliance on promised continuity and regularity of work hours); Rhode Island Hospital Trust Nat. Bank v. Varadian, 419 Mass. 841, 848-50 (1995) (promise must be “unambiguous” and made with an intent to create legally binding obligation; pre-contract expressions falling short of this cannot give rise to reasonable reliance as matter of law); Vakil v. Anesthesiology Associates of Taunton, 51 Mass.App.Ct. 114, 120-21 *444 (2001) (no reasonable reliance on assurance that, if plaintiff remained with employer, colleague would help him achieve presidency of firm); Hall v. Horizon House Microwave, Inc., 24 Mass.App.Ct. 84, 93-94 (1987) (no reasonable reliance on employer’s promise to create long-term incentive plan and allow employee to exercise options); Hinchey v. NYNEX Corp., 144 F.3d 134, 143-44 (1st Cir. 1998) (no reasonable reliance on general promise of future pension crediting).
In the case at bar, plaintiffs charge that the Savin Hill defendants promised him that he would serve as the store’s General Manager for the “long term,” would enjoy unspecified “job security,” and would “potentially share in the future profits of the business” once it became profitable[2] represent precisely the kind of vague and indefinite statements upon which reasonable reliance may not rest. See, e.g., Broussard v. CACI, Inc., 780 F.2d 162, 163 (1st Cir. 1986) (representations to plaintiff that employer was “hiring him for a career,” that “there [were] no restraints on what he could do or could not do professionally... with [the company],” and “if he did a good job he would have long-term employment” did not rise to the level of guaranteed employment or terminability only for good cause: “plaintiffs expectations of tenure may have been reinforced by these representations, but his expectations could not be held to have been created by these representations”) (internal quotations omitted); Treadwell v. John Hancock Mutual Life Ins. Co., 666 F.Sup. 278, 286 (D.Mass. 1987) (“The promise of secure and continued employment is vague and general. It is not a representation of employment of a specific period. Consequently plaintiff remained an employee at will”); Finbury v. Architectural Heritage Found., 23 Mass. L. Rptr. 367, 370 (Mass.Super. 2007) (Fabricant, J.) (promise to enter into profit-sharing joint venture, to pay bonus in lieu of equity, and to offer long-term employment held “too indefinite to support reliance”); accord Santoni v. FDIC, 677 F.2d 174, 179 (1st Cir. 1982) (affirming summary judgment for defendant where alleged promises were “too indefinite and uncertain to sustain a claim of promissory estoppel”); Kiely v. Raytheon Co., 914 F.Sup. 708, 712 (D.Mass. 1996), aff'd, 105 F.3d 734 (1st Cir. 1997) (rejecting promissory estoppel claim based on implied promise of “indefinite or permanent employment” as lacking necessary definiteness, certainty, or indicia of intent to make firm commitment: “In the case of a contract formed by reliance, the putative promise must not only be definite and certain in its terms, but must be one that the promissor, expecting to be legally bound by it, intends as a firm commitment”) (internal citations omitted).[3]
The Court notes that plaintiff has not brought a claim for breach of contract in this case, a fact perhaps reflecting his recognition of the settled Massachusetts law that agreements specifying no fixed duration of employment and no cause standard for discharge are deemed to be terminable at will. See, e.g., Jackson v. Action for Boston Community Development, 403 Mass. 8, 9 (1988); accord, Gasior v. Mass. General Hospital, 446 Mass. 645, 650 (2006); Mullen v. Ludlow Hosp. Soc’y, 32 Mass.App.Ct. 968, 969 (1992). Having failed to secure specific contractual commitments from Savin Hill regarding a durational term of employment and/or a standard for termination (indeed, having evidently secured no writing of any kind to memorialize the terms of his hire), Rodden must be deemed to have accepted at-will employment. See Gasior, 446 Mass. at 650. As such, and as a contractual matter, Savin Hill was free to discharge Rodden at any time and for almost any or no reason at all. See Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992); Jackson, 403 Mass. at 9. In these circumstances, and in accordance with the foregoing authorities, no reasonable reliance could have rested on vague and indefinite statements to the effect that Rodden would enjoy “job security” in a “long-term” position at Savin Hill. See supra. Count I of the Complaint thus fails to state a claim upon which relief can be granted, and must be dismissed.
IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
In Count II of the Complaint, plaintiff alleges that Rodden fully performed his obligations under the employment agreement with Savin Hill, implementing a management and sales system and securing all the necessary permits for the opening of its retail craft beer and wine store. The defendants, however, terminated Rodden’s employment without affording him the opportunity to earn the long-term wages and participate in the profit-sharing he anticipated he would enjoy in employment of more extended length. (See Compl. ¶¶79-81.) In so doing, it is alleged, the defendants violated the covenant of good faith and fair dealing implied in their contract with Rodden, entitling him to “lost wages, expectation damages [and] consequential damages . . .” (See Compl. ¶82.)
The SJC and lower courts have repeatedly held that a claim for breach of the implied covenant of good faith and fair dealing in the employment context requires proof that an employer was unjustly enriched as a result of a job termination, through the retention of “any readily definable, financial windfall resulting from the denial to [the discharged employee] of compensation for past services.” Gram v. Liberty Mutual Ins. Co., 391 Mass. 333, 335 (1984); Siles v. Travenol Laboratories, 13 Mass.App.Ct. 354, 358 (1982). Accord, Ayash v. Dana Farber Cancer Inst., 443 Mass. 367, 388 (2005) (same). The courts have likewise been clear and consistent that an employer’s lack of just cause for discharge, or even “bad faith" in its motivation, will not trigger good faith and fair dealing liability where only the employee’s future expectations have been thwarted. See, e.g., Harrison v. NetCentric Corp., 433 Mass. 465, 473 (2001) (employee can only recover earned wages and other compensation “clearly con *445 nected to work already performed”); Tenedios v. Wm. Filene’s Sons Co., 20 Mass.App.Ct. 252, 254 (1985) (same).
In the present case, the Complaint does not allege that Rodden was denied clearly identifiable earned compensation for past services to Savin Hill. Nor does the Complaint charge the defendants with reaping an undue windfall through the retention of money or property that rightfully belongs to Rodden. Rather, plaintiff insists in Count II that, in terminating his employment even though he had been led to expect a more secure and longer-term relationship with Savin Hill, Rodden suffered a loss of what he anticipated would be future rewards with the company—viz., additional wages and the potential for profit-sharing if the business were to become profitable. The Complaint itself thus prays that Rodden be awarded not a restitutionaiy remedy for wrongly withheld money or property, but instead “expectation damages” and “consequential damages” (Compl. at ¶82) resulting from the fact that his employment did not last as long as forecast. This is precisely the kind of forward-looking expectancy to which good faith and fair dealing liability has been held not to apply.[4] For this reason, Count II of the Complaint fails to state a claim upon which relief can be granted, and must be dismissed.
DISCHARGE IN VIOLATION OF PUBLIC POLICY
In Count IV of the Complaint, plaintiff alleges that he was discharged from employment, at least in part, in retaliation for his repeated objections to the illegal “under the table” arrangement pursuant to which he was paid during his employment. Plaintiff thus claims that, shortly after renewing his call to Savin Hill to cease violating state and federal tax law, and to place him on the company payroll so that proper tax with-holdings from his wages could be made, Savin Hill discharged him from its employ. (See Compl. at 1154-60.)
Massachusetts law recognizes a cause of action for employees who are discharged from employment in violation of “public policy.” The “redress is available to employees who are terminated for asserting a legally guaranteed right (e.g., filing workers’ compensation claim), for doing what the law requires (e.g., serving on a juiy), or for refusing to do what the law forbids (e.g., committing pexjuiy).” Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992); Smith-Pfeffer v. Walter E. Fernald State School, 404 Mass. 145, 149-50 (1989). The SJC has approved public policy relief for employees discharged for reporting violations of criminal law, Shea v. Emmanuel College, 425 Mass. 761, 763 (1997), and numerous lower courts have since applied the doctrine to protect employees who otherwise “blow the whistle”—internally or externally—about an employer’s perceived violations of law. See, e.g., Riley v. Green, 15 Mass. L. Rptr. 367 (Mass.Super. 2002) (Muse, J.) (approving public policy claim in favor of employee who complained about alleged violation of federal drug safety laws); DiGaetano v. Lawrence Firefighters Fed Credit Union, 15 Mass. L. Rptr. 394 (Mass.Super. 2002) (Houston, J.) (resting public policy claim on discharged employee’s internal complaints about improper business practices); Frost v. TGI Friday’s, Inc., 14 Mass. L. Rptr. 395 (Mass.Super. 2001) (Fabricant, J.) (recognizing public policy claim by employee who reported to restaurant customers that dishes were not washed in compliance with sanitation code); Clark v. South Middlesex Opportunity Council, 2000 WL 1299269 (Mass.Super. 2000) (Gants, J.) [11 Mass. L. Rptr. 542] (recognizing public policy claim by employee discharged for insisting that employer comply with legal reporting requirements); Briones v. Ashland, Inc., 164 F.Sup.2d 228, 230 (D.Mass. 2001) (public policy discharge claim rested on complaints about violation of state and federal safety equipment requirements); Smith v. MITRE Corp., 949 F.Sup. 943, 951-52 (D.Mass. 1997) (approving public policy discharge claim predicated on internal complaints about false claims and fraudulent practices in government contracting).
In the case at bar, plaintiffs central allegation is that he was discharged for making internal complaints about Savin Hill’s violation of state and federal employment tax law. By insisting that he be placed on the company payroll so that proper and legally required withholdings could be made, Rodden plainly placed himself within the purview of the public policy doctrine’s protections. Whether the Complaint’s allegations are characterized as a refusal to accede to a violation of law (viz., under-the-table employee compensation), or a call to do what the law requires (viz., report tax withholdings), or an internal blowing of the whistle on unlawful business practices, there can be little doubt that plaintiff has put forward allegations sufficient to sustain the claim that his discharge violated Massachusetts public policy. The defendants’ Motion to Dismiss, therefore, shall be denied as to Count IV of the Complaint.[5]
FRAUDULENT MISREPRESENTATION
In Count V of the Complaint, plaintiff alleges that the defendants made fraudulent misrepresentations to induce him to leave Dewar and accept what he believed would be “secure” and “long-term” employment at Savin Hill. Plaintiff premises this claim on the identical allegations forming the basis of his promissory estoppel claim, supplemented by the charge that the defendants had no true intention of honoring the promises they are purported to have made. (See Compl. at 1162-73.)
Massachusetts law recognizes claims for fraudulent misrepresentation in the employment context. Such claims require proof that the defendant: (1) made a false representation of a material fact; (2) with knowledge of its falsity; (3) for the purpose of inducing the *446 plaintiff to act on the representation; and (4) the plaintiff reasonably relied upon the representation as true and acted upon it to his detriment. See Russell v. Cooley Dickinson Hospital, 437 Mass. 443, 458 (2002). Critically, the defendant’s misrepresentation must be as to a material fact [viz., one to which a reasonable person would attach importance in his decision-making, see Zimmerman v. Kent, 31 Mass.App.Ct. 72, 78 (1991)), and the plaintiffs detrimental reliance thereon must be reasonable. See Chedd-Angier Prod. Co. v. Omni Publ’ns Int’l. Ltd., 756 F.2d 930, 939 (1st Cir. 1985); Saxon Theatre Corp. of Boston v. Sage, 347 Mass. 662, 667 (1964). See generally Moriearty et al., Employment Law, 45 Mass. Practice ¶6.60 at 398 (2003 ed.) (“In assessing whether the reliance was reasonable, the fact-finder may assess whether the alleged misrepresentation was sufficiently specific to justify plaintiffs reliance on it”) (collecting cases).
In the case at bar, plaintiff has identified but a small handful of representations he claims to have been fraudulent. These are the statements he attributes to the defendants that he would serve as Savin Hill’s General Manager “going forward”; that he would be paid a “comparable” wage to the one he enjoyed at Dewar; and that he would have “job security” and “potentially share in the profits of the business after he made it profitable.” (See Compl. at ¶¶16, 20, 31, 62, 75, 79.) The Complaint itself acknowledges that plaintiff served as Savin Hill’s General Manager (see Compl. at ¶¶23-24, 29-30); and no allegation is made that, during the pendency of his employment, Rodden failed to receive a comparable wage relative to what he earned at Dewar. The only representation susceptible to a charge of falsify is the statement that Rodden would have unspecified “job security” and the “potential” to share in future profits if he should make Savin Hill’s craft beer and wine store profitable.
At the outset, the undersigned doubts whether statements as indefinite as the assertion that Rodden would have “job security” and as speculative as the suggestion that he would have the “potential” to share in future profits should they materialize can qualify as false statements of fact. As a general proposition, broad statements as to possible future conditions will not constitute actionable misrepresentations (even if they turn out to be false). See Steinke v. Sungard Fin. Sys., Inc., 121 F.3d 763, 766-67 (1st Cir. 1997) (rejecting fraud claim where supervisor’s remark alluding to a working relationship with plaintiff “over the next five to ten years” held insufficiently factual to constitute fraudulent promise); Gerli v. G.K. Hall & Co., 851 F.2d 452, 456 (1st Cir. 1988) (similar); Hinchey v. NYNEX Corp., 979 F.Sup. 40, 44 (D.Mass. 1997), aff'd, 144 F.3d 134 (1st Cir. 1998) (granting summary judgment against fraud claim where plaintiff allegedly relied on statement that her pension would be credited post-discharge; statement held to be promissory in nature and a prediction as to future events); Saxon Theatre Corp. of Boston, supra, 347 Mass. at 668 (1964); Barret Assocs., Inc. v. Aronson, 346 Mass. 150, 152 (1963) (“Statements promissory in nature . . . are not actionable”); Yerid v. Mason, 341 Mass. 527, 530 (1960) (“false statements of opinion, of conditions to exist in the future, or of matters promissory in nature are not actionable”). See generally Moriearty, supra, 45 Mass. Practice 16.58, at 395 (“As a general rule, actionable statements must be based on fact; promissory statements of future conditions are not actionable misrepresentations”). In accordance with these authorities, the defendants’ precatory statements about future “job security” and Rodden’s “potential” to share in theretofore unseen profits would appear to fall squarely outside what our courts have required for fraudulent statements of fact.
Even if such statements could be considered sufficiently factual—a false promise that Rodden would have longer-term employment at Savin Hill than what he was provided—claims for fraud further require that the plaintiffs reliance on same have been objectively reasonable. Courts in Massachusetts have been clear that statements that are vague and indefinite as to conditions to exist in the future, such as a promise of inchoate “job security” (that specifies no actual duration of employment) or the “potential” to earn future profits (that may or may not ever materialize), may not be the basis for reasonable reliance. See, e.g., Kaplan v. Home Depot, 1999 WL 70629, at **2-3 (D.Mass. 1999) (statements that job would be “long-term” and “life-long type” held too general and indefinite to be treated as promises warranting reasonable reliance by prospective employee); Finbury v. Architectural Heritage Found., Inc., 23 Mass. L. Rptr. at 370 (Mass.Super. 2007) (Fabricant, J.) (rejecting employee’s fraud claim premised on employer’s promise to enter into future joint venture without specific financial terms: “Reliance is unreasonable as a matter of law . . . where the expressed intention is insufficiently definite to support the formation of a contract. . . Until all essential terms are settled, it cannot reasonably be said that there is a meaningful intention which can be misrepresented”) (internal citations and quotations omitted); Hinchey v. NYNEX Corp., supra, 144 F.3d at 44 (assurances by supervisor that plaintiff was a “valued employee in good standing” held too general to justify detrimental reliance); Bolen v. Paragon Plastics, Inc., 754 F.Sup. 221, 226 (D.Mass. 1990) (“evaluating the reasonableness of reliance [includes] determining if the alleged representation was sufficiently specific to justify plaintiffs reliance on it”).
In the present case, the statements upon which Rodden rests his claim for fraud are undeniably nonspecific {e.g., Rodden will have “long-term” employment), susceptible to wide variations in interpretation (e.g., Rodden will be the General Manager “going forward”), and, at the very most, predictive as to possible *447 future events (e.g., Rodden would have the “potential” to share in Savin Hill’s profits if he should succeed in making the store profitable). For this independently sufficient reason, the allegations of fraud set forth in the Complaint fail to state a claim upon which relief can be granted. Count V of the Complaint will, therefore, be dismissed.
UNJUST ENRICHMENT
In Count III of the Complaint, plaintiff presses a claim for “unjust enrichment.” As pleaded, the claim is essentially a restatement of Rodden’s claims for promissory estoppel and fraud. Namely, plaintiff avers that, in reliance on the defendants’ false assurances of long-term job opportunity, he relied to his detriment by leaving secure employment at Dewar and then providing Savin Hill with the critical expertise it required to get its retail store “up and running.” (Compl. at ¶¶84-85.) Instead of seeking recompense for his own detrimental reliance (as he does in his claims for promissory estoppel and fraud), however, plaintiff seeks disgorgement of the value of the benefit he conferred upon Savin Hill as its General Manager—a benefit he maintains exceeded the value of the services one would ordinarily furnish as a General Manager. (Compl. at ¶89.)
Inasmuch as the Complaint’s count for unjust enrichment merely posits an alternate theory of remedy appended to the same previously pleaded causes of action (promissory estoppel and fraud), rather than an independent basis for liability, this claim necessarily fails for the same reasons as plaintiffs claims in Counts I and V. The claim will, therefore, be dismissed.
TORTIOUS INTERFERENCE WITH ADVANTAGEOUS RELATIONS
In Count VI of the Complaint, plaintiff alleges that, through false promises of future job security and opportunity, the defendants induced him to leave advantageous employment at Dewar. Plaintiff further alleges that such conduct by the defendants was motivated by a self-interested desire to exploit his knowledge and expertise, as they had no intention of fulfilling the promise of long-term employment they had made. (See Compl. at ¶¶99-101.) On this basis, plaintiff claims that the defendants are liable for tor-tious interference with advantageous business relations. The Court does not agree.
The established elements of a tortious interference claim are as follows. A plaintiff must prove that: (1) he had a contract, expected contract or other advantageous business relationship with a third party; (2) the defendant knew of the contract or business relationship; (3) the defendant induced the third party to breach or otherwise impair the contract or advantageous relationship; (4) the defendant acted out of improper motive or employed improper means; and (5) the defendant’s conduct caused the plaintiff pecuniary harm. See Ayash v. Dana Farber Cancer Inst., 443 Mass. 367, 394-95 (2005); Shafir v. Steele, 431 Mass. 365, 369 (2000); Shea v. Emmanuel College, 425 Mass. 761, 764 (1997); Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994). In the case at bar, several deficiencies in the plaintiffs claim are manifest.
First, the gravamen of the claim is that the defendants induced Rodden himself to leave Dewar with promises of a superior job opportunity. Plaintiff thus alleges that he chose to leave Dewar, a position he represents to the Court as “secure,” in reliance on these assurances. Nowhere does the Complaint allege that the defendants induced a third party (such as Dewar) to terminate plaintiffs advantageous relationship; and the Court has been unable to locate any case in Massachusetts sustaining a tortious interference claim based on a plaintiffs own decision to resign employment to pursue what he perceived to be a better job opportunity.[6] Absent evidence of a relationship-ending act on the part of a third party induced by actions of the defendants, an essential element of a tortious interference claim is lacking. See Kaplan v. Home Depot, supra, at * 2 (plaintiff failed to state a claim for interference with contractual relations where he alleged that employer caused him to sever his own business relations with others).
Second, the thrust of plaintiffs tortious interference claim is that the defendants persuaded him to resign his employment with Dewar in order to draw him to Savin Hill so that they could exploit his knowledge and expertise for their fledgling store. See, e.g., Compl. at ¶ 101 (“They planned to use Mr. Rodden for his knowledge and expertise in the retail food and beverage industry and let him go as soon as they had taken everything he had to offer them in getting the store up and running”). Crediting this factual allegation as the Court must, it suggests the kind of financial self-interest that our courts have held will not qualify as “improper motive” for tortious interference purposes. See, e.g., King v. Driscoll, 418 Mass. 576, 587 (1994) (“The motivation of personal gain, including financial gain, . . . generally is not enough to satisfy the improper interference requirement”); United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 817 (1990) (similar). It is not “personal hostility or ill will,” or a “ ‘spiteful, malignant purpose’ that is unrelated to a legitimate [corporate] interest [of the employer].” Anzalone v. Administrative Office of Trial Court, 457 Mass. 647, 660-61 (2010); Weber v. Community Teamwork, Inc., 434 Mass. 761, 782 (2001).[7] This is an elemental failure of the claim.
Finally, a tortious interference plaintiff must prove that, by reason of the defendant’s conduct, he was caused to suffer pecuniary harm. ELM Medical Lab. v. RKO General, Inc., 403 Mass. 779, 787 (1989); TechP *448 lus, Inc. v. Ansel, 59 Mass.App.Ct. 12, 18 (2003) (“the essence of the tort is damage to a business relationship or contract of contemplated economic benefit”) (internal quotations omitted). Here, the Complaint alleges that Dewar had shuttered its retail operations on the day immediately following Rodden’s last day with the company and before he actually commenced employment with Savin Hill. (See Compl. at ¶9.) In other words, Rodden’s last day of employment with Dewar coincided with that business’s last day of operation. There being no allegation that Dewar went out of business because Rodden gave his notice,[8] the Court discerns no pecuniary harm to Rodden occasioned by the improper actions he ascribes to the defendants. Had Rodden not commenced employment with Savin Hill when he did, he would have lost his job at Dewar that very same day. Instead of having (at most) a single day of employment at Dewar to turn out the lights, plaintiff enjoyed nearly four months of employment at Savin Hill. Not the extended tenure he wanted or expected, of course; but it cannot be said that Rodden sustained pecuniary loss by reason of his decision to terminate employment at Dewar. This deficiency of proof is fatal to the plaintiffs tortious interference claim. See Ratner v. Noble, 35 Mass.App.Ct. 137, 138-39 (1993); TechPlus, Inc., 59 Mass.App.Ct. at 18-19 (no pecuniary loss where plaintiffs received all due commissions for services prior to termination of relationship with defendants).
CONCLUSION AND ORDER
In accordance with the foregoing, the Defendants’ Motion to Dismiss is ALLOWED IN PART and DENIED IN PART, as follows. The motion is:
(1) ALLOWED as to Count I in its entirety;
(2) ALLOWED as to Count II in its entirety;
(3) ALLOWED as to Count III in its entirety;
(4) ALLOWED as to Count IV to the extent it is asserted against defendants Diep and Van, and DENIED as to Count IV to the extent it is asserted against defendant Savin Hill Enterprises;
(5) ALLOWED as to Count V in its entirety; and
(6) ALLOWED as to Count VI in its entirety.

 Che following facts are derived from the Complaint, and are construed in the light most favorable to the plaintiff.

 he other promises attributed to the defendants—viz., that Rodden would be made General Manager of Savin Hill and compensated at a “comparable” level to what he enjoyed at Dewar—are not ones the Complaint alleges to have been violated. To the contrary, the Complaint recites explicitly that Rodden was made General Manager of Savin Hill (see Compl. at®123-24, 36-37), and nowhere alleges that Rodden was not paid comparably to the salary he received at Dewar. Plaintiffs persistent objection is to the fact that he was discharged from Savin Hill without good cause less than four months after he started working there, contrary to what he had been led to believe would be longer-term employment.

 Chis is consistent with the law of numerous other jurisdictions. See, e.g., Murray v. Commercial Union Ins. Co., 782 F.2d 432, 435 (3d Cir. 1986) (“assurances of a future and lifetime career” and “employment for as long as [plaintiff] wanted” held not to affect at-will employment); Engstrom v. John Nuveen & Co., 668 F.Sup. 953, 959-60 (E.D.Pa. 1987) (assurance of job “until voluntary retirement” did not rebut presumption of at-will employment); Kelly v. Chase Manhattan Banic, 717 F.Sup. 227, 235-36 (S.D.N.Y. 1989) (statements telling employee not to worry about termination and that employee would have a “good career” with employer "are not clear and unambiguous promises justifying the application of promissory estoppel” but are instead “general assurances of longevity with the company” that are unenforceable at law); Shaw v. J. Pollock and Co., 612 N.E.2d 1295, 1298 (Ohio Ct.App. 1992) (“A promise of future benefits or opportunities without a specific promise of continued employment does not support a promissory estoppel exception to the employment-at-will doctrine’’); Albert v. Davenport Osteopathic Hospital, 385 N.W.2d 238 (Iowa 1986) (unless there is “consideration beyond the employee’s promise to perform, a contract for permanent or lifetime employment is construed to be for an Indefinite time” and thus terminable at will); Aberman v. Malden Mills Industries, 414 N.W.2d 769, 771 (Minn.App. 1987) (“Absent an additional express or implied stipulation of duration of employment [or a showing of consideration in addition to performance of the job], the following terms indicate only an at-will contract: ‘permanent employment,’ ‘life employment,’ and [employment] ‘as long as the employee chooses’ ”); Hilleslandv. Federal Land Bank Ass'n, 407 N.W.2d 206, 210-11 (N.Dak. 1987) (assurance of “permanent” and “career-type position” did not alter at-will nature of employment).

 This conclusion is not affected by plaintiffs contention that a greater proportion of the expertise-intensive work he performed as General Manager for Savin Hill took place in the early stages of the parties’ arrangement. Although it may be true that Rodden became more easily replaced after he guided Savin Hill through its permitting and the store was operational, the fact remains that he was paid all of his agreed wages for such work. Rodden could have, but did not, secure a contractual commitment for durationally longer employment, or a guarantee of bonus compensation once the business was up and running. He could likewise have negotiated for severance benefits should his employment be terminated within its first year, or without just cause. Having failed to do so, however, Rodden cannot reasonably be heard to complain (under the auspices of good faith and fair dealing) that he received all of but no more than the compensation that was promised to him for the work he performed.

 The defendants’ Rule 12 motion will be allowed, however, as to the two individual defendants (Ms. Diep and Mr. Van), co-workers of the plaintiff who (notwithstanding any ownership interest they might have in Savin Hill) are not alleged to have been his employer. See Smith-Pfejfer, 404 Mass, at 149 (wrongful discharge claim requires termination by employer).

 Plaintiffs counsel at hearing was likewise unable to identify any such authority.

 Confirming that plaintiffs discharge was not borne of personal ill will or hostility by the defendants, the Complaint itself alleges that Karen Diep, the very person who informed Rodden that he was being let go, started to cry from guilt when she observed Rodden’s reaction to the news. (See Compl. at ¶53.)

 Indeed, the most reasonable and common-sense inference is the precise contrary—viz., Rodden resigned his position because he knew that Dewar was going out of business imminently.